## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

PHILIP J. CHARVAT,

        Plaintiff,

    v.

DFS SERVICES LLC, et al.,

        Defendants.

**Case No. 2:09-CV-490**

**JUDGE SARGUS**

**MAGISTRATE JUDGE KEMP**

### OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Default

Judgment against Defendant Epixtar Marketing Corporation (Doc. 64), and the respective

Motions to Dismiss of Defendants DFS Services LLC and Discover Bank (Doc. 28), Americall

Group, Inc. (Doc. 42), and Consolidated Communications Market Response, Inc. (Doc. 49).  For

the reasons set forth below, Plaintiff's motion for default judgment will be **HELD in**

**ABEYANCE**, and Defendants' motions will be **GRANTED**.

### I. Background

Plaintiff Philip Charvat ("Charvat") brings the instant action against Defendants DFS

Services LLC and Discover Bank (collectively "Discover"), Americall Group, Inc.

("Americall"), Consolidated Communications Market Response, Inc. ("CCMR"), Epixtar

Marketing Corp. ("Epixtar"), and Visionquest Marketing Services, Inc. ("Visionquest") with

claims for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and

the Ohio Consumer Sales Practices Act, Ohio Revised Code § 1345.01 *et seq.* ("OCSPA").

Charvat also brings a claim for the tort of invasion of privacy.

The facts alleged in Charvat's lengthy amended complaint are straightforward and relate

to telemarketing calls purportedly placed on behalf of Discover by the other Defendants.

According to Charvat, on March 28, 2005, he received a telemarketing call placed by CCMR on behalf of Discover, and during that call he asked the caller to place him on CCMR's "do-not-call list." (Am. Compl. ¶ 15.)  Thereafter, between August 31, 2006 and April 24, 2009, he claims to have received sixty-seven unsolicited telemarketing calls on behalf of Discover, with one call allegedly being placed by Visionquest, two calls allegedly being placed by CCMR, sixteen calls allegedly being placed by Epixtar, and the remaining forty-eight calls allegedly being placed by Americall.  These sixty-seven calls form the basis of Charvat's claims.  Charvat alleges that he subsequently repeated his request to be placed on callers' do-not-call lists during call one, allegedly made by CCMR; call fifty, allegedly made by Americall; call fifty-seven, allegedly made by Epixtar; and call fifty-nine, allegedly made by Epixtar.  (Am. Compl. ¶¶ 17, 69, 78, & 82.)

Charvat brings seven counts.  Counts 1 through 3 allege violations of the TCPA as to all sixty-seven calls.  Counts 4 and 5 allege that a subset of the sixty-seven calls violate the OCSPA.  Count 6 alleges that in placing the calls, Defendants invaded Charvat's privacy.  Finally, Count 7 requests a declaratory judgment that the conduct underlying Charvat's fourth and fifth counts is violative of the OCSPA.  Presently before the Court are the motions to dismiss of Discover, Americall, and CCMR, which collectively seek dismissal of all but Charvat's first count.  Additionally, Charvat has filed a motion for default judgment against Epixtar.

## II. Charvat's Motion for Default Judgment Against Epixtar

Epixtar's default was entered by the Clerk on July 1, 2010 (Doc. 62), and Charvat subsequently moved for a default judgment.  However, as this case involves multiple defendants, an entry of judgment against Epixtar is not appropriate at this time.  *See, e.g.*, *Frow v. De La Vega*, 82 U.S. 552 (1872); *Kimberly v. Coastline Coal Corp.*, No. 87-6199, 1988 WL 93305, at

*3 (6th Cir. Sept. 9, 1988) (per curiam) ("When a default is entered against one defendant in a multi-defendant case, the preferred practice is for the court to withhold granting a default judgment until the trial of the action on the merits against the remaining defendants. If plaintiff loses on the merits, the complaint should then be dismissed against both defaulting and non-defaulting defendants.") Accordingly, the Court will hold Charvat's motion for a default judgment against Epixtar in abeyance pending resolution of the merits of this action. At such time as the merits are finally resolved, Charvat may move the Court for permission to reactivate the default judgment motion.

### III. Motions to Dismiss

The motions of Discover, Americall, and CCMR collectively seek dismissal of counts two through seven of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

The Court will consider Defendants' motions on a count by count basis.

---

[1] The Court notes that Americall's motion to dismiss also raised jurisdictional arguments, but these arguments have since been foreclosed by the Sixth Circuit's recent decision in *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (2010). *See id.* at 463 (holding that district courts possess federal-question jurisdiction over claims arising under the TCPA)

## A. Counts 2 & 3 as to Americall and CCMR

Americall and CCMR allege that Counts 2 and 3 fail to state claims for violations of the

TCPA or otherwise are redundant to Count 1. The Court agrees. Pursuant to 47 U.S.C. §

227(c)(1), the Federal Communications Commission ("FCC") is tasked with issuing regulations

"to protect residential telephone subscribers' privacy rights to avoid receiving telephone

solicitations to which they object." If an individual receives more than one call by or on behalf

of an entity within any twelve month period, the TCPA creates a private right of action to

recover actual monetary loss or statutory damages of $500, whichever is greater, for violations of

the regulations issued by the FCC. *Id.* § 227(c)(5). Treble damages are available in cases of

knowing or willful violations. *Id.*

The FCC's regulations provide that "no person or entity shall initiate any call for

telemarketing purposes to a residential telephone subscriber unless such person or entity has

instituted procedures for maintaining a list of persons who request not to receive telemarketing

calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). In subsections 47

C.F.R. § 64.1200(d)(1)–(6), the regulations provide the minimum standards that must be met by

the required procedures.

Count 1 of the amended complaint alleges that each of the sixty-seven calls violated 47

C.F.R. § 64.1200(d) because Defendants failed to institute the procedures required by that

subsection. (Am. Compl. ¶ 94.) Count 2 alleges that each of the sixty-seven calls violated 47

C.F.R. § 64.1200(d)(3) because Defendants failed to honor Charvat's request to be placed on the

callers' do-not-call lists. (Am. Compl. ¶ 97.) Finally, Count 3 alleges that each of the sixty-

seven calls violated 47 C.F.R. § 64.1200(d)(6) because Defendants failed to make a record of

Charvat's previous requests to be placed on the callers' do-not-call lists. (Am. Compl. ¶ 100.)

Americall and CCMR assert that Counts 2 and Count 3 should be dismissed for failing to state separate violations of the TCPA. According to them, the only conduct proscribed by the regulations is the initiation of a call without having implemented the proper procedures. The regulations do not specifically proscribe actually calling an individual after the individual has requested placement on a do-not-call list as alleged in Count 2, nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list as alleged in Count 3.

The Sixth Circuit's decision in *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009) is directly on point. There, in affirming the district court's dismissal of Charvat's lawsuit for failing to meet the amount-in-controversy required for diversity actions, the Court held:

> The "violation of the regulations" is therefore the initiation of the phone call without having implemented the minimum procedures. Because, read in context, the statute and regulations focus on the telephone call itself, we conclude that the district court did not err in holding that Charvat cannot collect statutory damages on a per-violation basis under the TCPA.

*Id.* at 632. Relatedly, the TCPA "allows for statutory damages on only a per-call basis." *Id.* at 631. Accordingly, Counts 2 and 3 must be dismissed as to Americall and CCMR as they fail to state claims upon which relief can be granted.

### B. Count 1 as to Americall

Americall raises two arguments related to its liability under Count 1 that the Court will now address. First, it asserts that it cannot be held liable to Charvat for the nineteen calls allegedly placed by CCMR, Epixtar, and Visionquest. The Court agrees with this proposition. Charvat has failed to allege that the calls placed by these Defendants were made on behalf of Americall. Charvat's assertion that so holding necessarily requires this Court to consider matters outside the amended complaint, e.g. Americall's relationship to the other Defendants, is not well taken. As the complainant, it is Charvat's obligation to plead facts demonstrating that he is

5

entitled to relief. Absent some indication that Americall was somehow involved with the nineteen other calls, there is no basis for liability attaching to Americall as to those calls. Accordingly, Americall cannot be subjected to liability for the calls it is not alleged to have placed on behalf of Discover.

Second, Americall asserts that, as to calls it did place, it can only be liable for the call during which Charvat first requested to be placed on Americall's do not call list, and for all subsequent calls. This would limit Americall's potential liability from forty-eight calls to six calls. However, this argument is precluded by *GVN Michigan*, as the only actual violation of the TCPA regulations occurs when a telemarketer initiates a call without having the proper procedures in place. If Americall did not have the proper procedures in place when it made the forty-eight calls as alleged by Charvat, it is irrelevant whether Charvat had ever requested to be placed on Americall's do-not-call list.

### C. Count 4

Count 4 alleges that calls four through sixty-seven violated the OCSPA on the theory that violations of the TCPA are per se violations of the OCSPA. The OCSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." OHIO REV. CODE § 1345.02(A). Discover, CCMR, and Americall have each raised different grounds for dismissal of Count 4.

#### 1. Discover

Transactions between financial institutions and their customers are excluded from the OCSPA's definition of "consumer transaction." *See* OHIO REV. CODE § 1345.01(A). Discover asserts that the calls at issue in this case were transactions with its customers, and are therefore excluded from the coverage of the OCSPA. Charvat does not dispute that Discover is a financial

institution, but argues instead that, because he was never a customer of Discover, the exclusion should not apply. While the amended complaint contains that very allegation (see Am. Comp. ¶ 14), for purposes of a 12(b)(6) motion, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The precise argument made by Charvat was rejected by apparently the only Ohio appeals court to consider the issue. In *Ferron v. Fifth Third Bank*, No. 08AP-473, 2008 WL 5423555 (Ohio Ct. App. Dec. 31, 2008), Ohio's Tenth District Court of Appeals held that an advertisement placed by a bank in a newspaper constituted a transaction between a financial institution and its customers. *See id.* at \*3. Charvat alleges that the Court should disregard this decision. In so doing, he cites *Stanek v. Greco*, 323 F.3d 476 (6th Cir. 2003), which summarizes the rule for district courts' consideration of state court precedent as follows:

> If the forum state's highest court has not addressed the issue, the federal court must ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with the issue . . . . "Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

*Id.* at 478 (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (citations omitted). However, aside from his bald assertion that *Fifth Third Bank* was incorrectly decided, Charvat has cited nothing to suggest that the Supreme Court of Ohio would disagree with the Tenth District Court of Appeal's holding in that case.

Because the telemarketing calls at issue in this case constitute a transaction between a financial institution and its customer under Ohio law, Count 4 is dismissed as to Discover.

### 2. CCMR

The only calls allegedly placed by CCMR were numbers one and three. As Count 4 does not allege that those calls violate the OCSPA, that Count must be dismissed as to CCMR.

### 3. Americall

Americall moves to dismiss Count 4 on the grounds that violations of the TCPA are not per se violation of the OCSPA. According to Americall, as Charvat has failed to allege that any of the calls at issue in this case were unfair or in any way deceptive, he has not stated a claim for violations of the OCSPA. In support of its position, Americall points to the Supreme Court of Ohio's decision in *Culbreath v. Golding Enterprises, L.L.C.*, 872 N.E.2d 284 (Ohio 2007). There, the Supreme Court considered whether a lawyer had a private right of action under the TCPA when he received an unsolicited facsimile message from the defendants, and whether receipt of the unsolicited message also constituted a violation of the OSCPA. The Court held that the section of the TCPA allegedly violated did not provide a private right of action and that no OSCPA violation had occurred. *See id.* at 286. As to the OSCPA claims, the Court's holding had two components. First, the Court concluded that business to business solicitations were outside the scope of the OSCPA's coverage. *Id.* at 289–90. Second, and of relevance to the instant case, the Court held that even if the facsimile violated the provisions of the TCPA, absent some showing that it was unfair or deceptive, it could not be in violation of the OSCPA. *See id.* at 291 ("In order to prevail on those claims, however, plaintiffs do have to make a showing that the unsolicited fax is part of a consumer transaction that is a deceptive, unfair, or unconscionable practice.")

8

Charvat contends that this pronouncement should be discounted as dicta. However, this assertion is belied by the language of the Supreme Court's own characterization of its holding in *Culbreath*:

> For the reasons that follow, *we hold* that Section 227(b), Title 47, U.S. Code does not provide a private right of action for violations of Section 68.318(d), Title 47, C.F.R. We further find that there is no OCSPA violation because no "individual," i.e., natural person, was involved in the transaction, and therefore, no "consumer transaction" occurred for the purposes of R.C. 1345.01(A). *Furthermore, the mere sending to and receipt by an individual of an unsolicited fax advertisement, where there is no evidence that the fax is deceptive, unfair, or unconscionable, is not a violation of the OCSPA.* We affirm the judgment of the court of appeals in toto.

*Id.* at 286 (emphasis supplied). Even if the language regarding actual deception were merely dicta, in this Court's view, it would constitute a strong indication of what the Supreme Court of Ohio would decide if presented with the issue now before the Court—whether telemarketing calls that allegedly violate the TCPA also violate the OSCPA absent some allegation of deception. Accordingly, this Court holds that Charvat's fourth count fails to state a claim under the OCSPA and must be dismissed as to Americall.

### D. Count 5

Count 5 of the amended complaint alleges that various of the calls at issue in this case violated the OSCPA because Defendants used "a fictitious name that had not been properly registered with the Ohio Secretary of State." (Am. Comp. ¶ 106). The fictitious name used by the telemarketer Defendants was "Discover Card." (*See, e.g.*, Am. Compl. ¶ 23(d).) As with Count 4, Discover, CCMR, and Americall claim that Count 5 should be dismissed on various grounds.

### 1. Discover

For the same reasons stated in Part III.C.1 *infra*, Count 5 must be dismissed as to

Discover because the conduct alleged by Charvat is excluded from the coverage of the OCSPA.

### 2. CCMR

As with Count 4, Count 5 must be dismissed as to CCMR because Charvat has failed to

allege that any of the calls placed by CCMR violated the OSCPA under the theory identified in

that Count.

### 3. Americall

Americall asserts that Count 5 should be dismissed because use of a fictitious name is not

a violation of the OSCPA absent some showing that the supplier's use of such a name rises to the

level of a deceptive practice. In *Charvat v. Farmers Insurance Columbus, Inc.*, 897 N.E.2d 167

(Ohio Ct. App. 2008), the Ohio Tenth District Court of appeals held that "[w]here no other

deceptive acts are alleged in connection with the use of a fictitious business name, the mere

failure to register does not violate the CSPA." *Id.* at 182 (citing *Ganson v. Vaughn*, 735 N.E.2d

483 (Ohio Ct. App. 1999) & *Crull v. Maple Park Body Shop*, 521 N.E.2d 1099 (Ohio Ct. App.

1987)). Similar holdings were reached by another judicial officer of this Court in *Ferron v.

Metareward, Inc.*, 698 F. Supp. 2d 992 (S.D. Ohio 2010) and *Ferron v. VC E-Commerce

Solutions, Inc.*, No. 2:06-CV-322, 2007 WL 295455 (S.D. Ohio Jan. 29, 2007). *See Metareward*,

698 F. Supp. 2d at 1002 ("regardless of whether the failure to register indeed presents [an

OCSPA] violation that the Ohio Attorney General can pursue, there is simply no private cause of

action for such lack of registration").

In opposition to this authority, Charvat asks this Court to look to a number of

unpublished decisions from Ohio's common pleas and municipal courts that support his position

10

that use of an unregistered, fictitious name constitutes a per se violation of the OSCPA. According to Charvat, these unpublished opinions of Ohio's lower courts take on precedential value upon being placed in the OSCPA's "Public Inspection File" ("PIF") by Ohio's Attorney General. However, Charvat overstates the significance of a decision's placement in the PIF. Pursuant to § 1345.05 of the Ohio Revised Code, the Attorney General is directed to "[m]ake available for public inspection all . . . judgments, including supporting opinions, by courts of this state . . . determining that specific acts or practices violate section 1345.02, 1345.03, or 1345.03 of the Revised Code." OHIO REV. CODE § 1345.05(A)(3). The import of the Attorney General's placement of a decision in the PIF, which is not discretionary, is that statutory damages become available for deceptive acts or practices identified in the particular decisions. *See id.* § 1345.09(B).

Charavat also cites two unreported Ohio appellate court decisions that fail to support his position. *See Burdge v. Subvest 4, L.L.C.*, No. C-060354, 2007 WL 949802 (Ohio Ct. App. Mar. 30, 2007) & *Charvat v. Telelytics, LLC*, No. 05AP-1279, 2006 WL 2574019 (Ohio Ct. App. Aug. 31, 2006). For instance, in *Burdge*, the Fifth District Court of Appeals only held that Burdge should have been allowed to pursue statutory damages against the defendant pursuant to § 1345.09(B) because Burdge had established that a case holding that use of an unregistered, fictitious name is a violation of the OSCPA had been previously filed in the PIF. *See Burdge*, 2007 WL 949802 at *4.

This Court is persuaded that the law in Ohio is that use of an unregistered, fictitious name, absent some allegation or showing that the use of the name is deceptive or intended to deceive, does not violate the OSCPA. Here, Charvat has made no allegation that the use of the

term "Discover Card" constituted a deceptive act or practice. Accordingly, Charvat's fifth count is dismissed as to Americall.

### E. Count 6

Count 6 alleges that the sixty-seven telemarketing calls, which were placed between August 31, 2006 and April 24, 2009, constitute the Ohio tort of invasion of privacy. Discover, Americall, and CCMR all contend that this claim is legally barred because an average of less than two and one-half calls per month simply does not rise to the level of an invasion of privacy. The Court agrees.

The Supreme Court of Ohio has defined invasion of privacy as:

the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Housh v. Peth*, 133 N.E.2d 340, 341 (Ohio 1956) (syllabus of the Court). Telemarketing calls reach the level of an invasion of privacy when "calls are repeated with such persistence and frequency as to amount to a course of hounding the Plaintiffs that becomes a substantial burden to his existence that the Plaintiffs' privacy is invaded." *Irvine v. Akron Beacon Journal*, 770 N.E.2d 1105, 1112 (Ohio Ct. App. 2002). In *Charvat v. NMP, LLC*, 703 F. Supp 2d 735 (S.D. Ohio 2010), this Court held that thirty-one telephone calls received over a three month period could not legally rise to the level of an invasion of privacy. *See id.* at 742–43. Accordingly, sixty-seven calls placed over a much longer time period cannot be said to have constituted a substantial burden to Charvat's existence, and Count 6 must be dismissed as to Discover, CCMR, and Americall for failing to state a claim on which relief can be granted.

12

### F. Count 7

Finally, Count 7, which requests a declaratory judgment that telemarketing calls violating the TCPA are per se violations of the OSCPA, and that use of an unregistered, fictitious name in placing telemarketing calls violates the OSCPA, also must be dismissed as to Discover, Americall, and CCMR. As stated *supra*, the conduct that Charvat seeks to declare illegal is not violative of the OSCPA.

### IV. Conclusion

For the foregoing reasons, Charvat's Motion for Default Judgment (Doc. 64) is **HELD in ABEYANCE**. The Clerk is directed to remove this motion from the Court's pending motions list. By motion, Charvat may reactivate the motion upon final determination of the merits of this action. Additionally, the Motions to Dismiss of Discover (Doc. 28), Americall (Doc. 42), and CCMR (Doc. 49) are **GRANTED**. Counts 4 through 7 are dismissed as to Discover. Counts 2 through 7 are dismissed as to Americall and CCMR.

**IT IS SO ORDERED**


3-18-2011
**DATED**                                    **EDMUND A. SARGUS, JR.**
                                             **UNITED STATES DISTRICT JUDGE**

13